**ALABAMA GREAT SOUTHERN RAILROAD COMPANY, et al., Plaintiffs,**

v.

**Ralph P. EAGERTON, Jr., etc., et al., Defendants.**

Civ. A. No. 80–300–N.

United States District Court,
M. D. Alabama, N. D.

Nov. 14, 1980.

Rushton, Stakely, Johnston & Garrett, Charles E. Porter, Montgomery, Ala., Laughlin, Halle, Regan, Clark & Gibson, Everett B. Gibson, and Gregory G. Fletcher, Memphis, Tenn., and James W. McBride, Gen. Atty., Taxes–Southern Railway System, Washington, D. C., for plaintiffs.

Charles A. Graddick, Atty. Gen. of Alabama, Herbert I. Burson, Jr., Chief Counsel and Asst. Atty. Gen., Ronald J. Bowden, Asst. Atty. Gen., Montgomery, Ala., for defendants.

OPINION

HOBBS, District Judge.

Plaintiffs, Southern Railway Company and its subsidiaries and affiliates operating in the State of Alabama, bring this action against the Commissioner of Revenue of the State of Alabama, Ralph P. Eagerton, Jr., and the Assistant Commissioner of Revenue of the State of Alabama, S. L. Evans, seeking declaratory and injunctive relief in the form of (1) a declaration by this Court that the license or privilege tax imposed upon plaintiffs by § 40–21–57, Code of Alabama, violates Title 49 U.S.C. § 11503, a federal statute prohibiting tax discrimination

against rail transportation property, and (2) an order by this Court enjoining the defendants from the further collection of the challenged license tax. For the reasons set out below, the Court finds the challenged license tax to be beyond the scope of 49 U.S.C. § 11503's prohibition against discriminatory tax treatment of railroad property.

### FACTS

Plaintiffs initiated this suit in July, 1980, seeking, in addition to the relief now under consideration, a declaration by this Court that Alabama's system of assessing · rail transportation property violated 49 U.S.C. § 11503. Specifically, plaintiffs contended that rail transportation property was valued at 100 per cent of its reasonable market value for tax purposes while other commercial property was valued at only 75 per cent of its reasonable market value. By stipulation, the parties agreed that plaintiffs' contention was factually accurate. Pursuant to this stipulation, the Court entered a consent decree finding that defendants' system of valuation violated § 11503 and enjoining defendants from taxing plaintiffs' property at more than 75 per cent of its reasonable market value. The issue of the validity of the railroad license tax under § 11503 remained to be tried.

In this dispute, the parties have also entered into a "Stipulation of Facts," which is attached to this opinion as Appendix 1. The facts agreed upon by the parties and accepted by the Court are a sufficient basis upon which to reach a decision and need only be highlighted before addressing the question crucial to the resolution of the dispute; i. e., the scope of 49 U.S.C. § 11503(b)(4). The stipulation provided: (1) a railroad license or privilege tax is imposed on railroads by § 40–21–57, *Code of Alabama* 1975; (2) plaintiffs are subject to this license tax; (3) in fiscal year 1979, plaintiff Southern Railway Company's obligation un-

der the license tax amounted to $566,146.00; (4) for fiscal year 1979, Alabama collected a total of $1,203,143.00 from railroads under this tax (which amount does not include money collected from other utilities under similar license taxes); (5) the railroad license tax is computed on the basis of the individual railroad's gross receipts; and (6) not all commercial and industrial taxpayers in Alabama are subject to such a license tax or its equivalent.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this action pursuant to 49 U.S.C. § 11503(c) which provides: "Notwithstanding section 1341 of title 28 and without regard to the amount in controversy or citizenship of the parties, a district court of the United States has jurisdiction, concurrent with other jurisdiction of courts of the United States and the States, to prevent a violation of subsection (b) of this section." The plaintiffs have alleged a violation of subsection (b).

The crux of plaintiffs' argument is that the license tax imposed by Alabama statute violates 49 U.S.C. § 11503(b)(4).[1] Specifically, plaintiffs contend: "Congress has decreed through § 306(1)(d) [49 U.S.C. § 11503(b)(4)] that no state may impose a tax upon railroads which is not also imposed upon other commercial and industrial taxpayers generally." A reading of § 11503(b)(4), the relevant legislative history, and the decisions under this provision persuades the Court that plaintiffs are incorrect in their interpretation of subsection (b)(4).

On its face, the title of the section in question limits its provisions to "Tax discrimination against rail transportation *property*." 49 U.S.C. § 11503 (emphasis added). Subsection (a) defines rail transportation property. The first three provisions of subsection (b) deal specifically with

---

1. Title 49 U.S.C. 11503(b)(4) provides:

    (b) The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

    \* \* \* \* \* \*

    (4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title.

property taxation. Only the final subsection, § 11503(b)(4), makes no explicit reference to property taxation. A survey of the legislative history, however, confirms the fact that Congress did not intend § 11503(b)(4) to have the wide sweep urged by the plaintiffs.

The "Joint Explanatory Statements of the Committee of Conference," Senate Conference Report No. 94–595, offers the following helpful observation as to the scope of § 11503:

> The conference substitute follows the Senate bill except that the conferees deleted the provision making this section inapplicable to any State which had, on the date of enactment, a constitutional provision for the reasonable classification of property for state purposes *and limited the provision to taxation of railroad property.* S.Conf.Rep. No. 94–595, 94th Cong., 2nd Sess. (1976), reprinted in [1976] U.S.Code Cong. & Ad.News, pp. 14, 148, 181. (emphasis added)

The meaning of this observation, placed in the context of the actual statutory language, seems clear. Section 11503(b)(4) was not intended to invalidate all taxes, of whatever nature, simply because those taxes are levied against railroads and not against all other commercial taxpayers. On the contrary, the conclusion to be drawn from the statute and legislative history is that § 11503(b)(4) was intended to deal only with property taxation.

Plaintiffs argue that an interpretation by this Court so limiting the reach of § 11503(b)(4) effectively converts subsection (4) into a sterile piece of legislation. The Court disagrees. A recent decision by a United States district court, relied upon by plaintiffs in their briefs and oral arguments, illustrates the error in plaintiffs' argument.

In *Ogilvie et al. v. State Board of Equalization of State of North Dakota et al.,* D.C., 492 F.Supp. 446 (1980), plaintiff railroads alleged that the State of North Dakota's inclusion of the railroads' personal property and trade fixtures in the assessed value of the railroads' property while personal prop-

erty and trade fixtures were not included in the assessed value of locally assessed business property violated § 11503. The *Ogilvie* court noted at the outset of its opinion that this action by North Dakota did not violate subsections (1), (2) or (3) of § 11503(b): "Because including personal property does not affect the assessment ratio referred to in subsection [(b)(1)], subsection [(b)(2)] is inapplicable. Because the same tax rate is applied to transportation property as applied to other 'commercial and industrial property' . . ., subsection [(b)(3)] is inapplicable." The court found, however, that the actions by North Dakota did violate § 11503(b)(4):

> The intent of Congress in enacting Section 306 [§ 11503] was to protect interstate rail carriers from discriminatory *property* taxation. The most obvious form of tax discrimination is to impose a tax on a class of rail transportation *property* that is not imposed on other nonrailroad *property* of the same class. The inclusion of personal property in the assessed value of railroad property and other centrally assessed businesses imposes a personal property tax on centrally assessed businesses that is not imposed on locally assessed businesses.
>
> The court therefore concludes that defendants have violated Section 306(1)(d) [§ 11503(b)(4)] by including personal *property* in the assessed value of plaintiffs' property. Such inclusion results in the imposition of a personal *property* tax on railroads that is not imposed on locally assessed businesses. *Ogilvie,* at 13–14. (emphasis added)

The lesson to be drawn from the *Ogilvie* case is obvious. Had it not been for subsection (b)(4) of § 11503, a discriminatory aspect of North Dakota property tax law would have gone uncorrected. The fact that subsection (b)(4) was successfully invoked on behalf of the *Ogilvie* plaintiffs does not, however, mean that it is applicable in this case. *Ogilvie* simply illustrates the point that § 11503(b)(4) has a field of operation without expanding the reach of that subsection beyond property taxation.

The *Ogilvie* decision is thus entirely consistent with today's ruling by the Court.

■ Finally, the Court notes that this entire dispute arises under a provision prohibiting property tax discrimination against the property of railroads. Nothing in the language of the statute itself or in its legislative history indicates that it was the intent of Congress to elevate railroads to a preferred position among taxpayers. Yet to construe § 11503(b)(4) as broadly as plaintiffs contend, so that any tax imposed on a railroad is to be invalidated unless a like tax is imposed on all commercial and industrial taxpayers, would have precisely that effect.

■ Defendants have pointed out that any given tax rarely applies to all taxpayers. Thus, to eliminate all taxes against railroads which are not applied uniformly to all taxpayers would have the effect of elevating railroads to a highly preferred position among industrial and commercial taxpayers. If § 11503(b)(4) is to be given such a broad and far–reaching sweep, Congress must give a clearer indication of its intent to so alter the tax status of railroads before this Court can accept the position advocated by plaintiffs.

For all of the above reasons, the Court concludes that the relief sought by plaintiffs of invalidating Alabama's license taxes as applied to railroads should not be granted. A judgment will be entered in accordance with this opinion.

## APPENDIX 1

### STIPULATION OF FACTS

It is hereby stipulated and agreed by and among the parties that, for the purpose of resolving the issues presented by the pleadings in this action only, the following facts are true and the exhibits attached hereto are genuine and material:

1. The plaintiffs are railroad companies subject to regulation by the Interstate Commerce Commission and are engaged in interstate commerce in and through the State of Alabama.

2. Defendant, Ralph P. Eagerton, Jr., is the Commissioner of Revenue of the State of Alabama. As such, he is the Chief Executive Officer of the Department of Revenue of the State of Alabama (Department) and exercises all the powers, authorities and duties vested in the Department under Alabama law. § 40–2–40, Code of Alabama 1975.

3. Defendant, S. L. Evans, is the Assistant Commissioner of the Department. As such, he exercises in all matters such authority and duties as are granted and delegated to him by the Commissioner of Revenue and, in the Commissioner of Revenue's absence, he assumes the duties of the office of Commissioner of Revenue. § 40–2–44, Code of Alabama 1975.

4. Defendants, Ralph P. Eagerton, Jr. and S. L. Evans, as Commissioner and Assistant Commissioner of the Department, exercise general and complete supervision and control over the collection of the railroad license or privilege tax imposed by § 40–21–57, Code of Alabama 1975 (Alabama railroad license tax).

5. The plaintiffs are subject to the Alabama railroad license tax; in 1979, plaintiff, Southern Railway Company, paid the Alabama railroad license tax in the amount of $566,146.00. For the fiscal year ending September 30, 1979, the State of Alabama collected $1,203,143.00 under the Alabama railroad license tax.

6. 49 U.S.C. § 11503 is an official revision and codification of Pub.L. No. 94–210, Section 306, 90 Stat. 54 (February 5, 1976), which was originally enacted as part of the Railroad Revitalization and Regulatory Reform Act of 1976 and codified unofficially as 49 U.S.C.A. § 26(c) [26c] (1978 Supp.). A true and accurate copy of § 306 is attached to this Stipulation of Facts as Exhibit "A". 49 U.S.C. § 11503 was published as part of Pub.L. No. 95–473, 92 Stat. 1337 (October 13, 1978), which was "an act to revise, codify and enact without substantive change the Interstate Commerce Act and related laws as Subtitle IV, Title 49, United States Code, 'Transportation'." Pursuant to Pub.L. No. 95–473, 92 Stat. 1466, § 3(a), the

statutory language of 49 U.S.C. § 11503 cannot be construed as making a substantive change to Section 306. Accordingly, the language of Section 306 is applicable to, and will be employed in, this proceeding.

7. Each of the plaintiffs pays annually to the State of Alabama the following taxes: state ad valorem taxes imposed by § 40–7–1, Code of Alabama 1975; local (county and municipal) ad valorem taxes imposed by § 40–7–1, Code of Alabama 1975; state income taxes imposed by § 40–18–2, Code of Alabama 1975; and sales and use taxes imposed by §§ 40–23–2 through 40–23–61, Code of Alabama 1975. As corporations doing business in Alabama, each of the plaintiffs pays annually to the State of Alabama corporate franchise taxes imposed by § 40–14–41, Code of Alabama 1975. For 1979, plaintiff, Southern Railway Company, paid these taxes in the following approximate amounts:

| | | |
|---|---|---|
| State ad valorem taxes | $ | 185,250.00 |
| Local ad valorem taxes | $ | 846,000.00 |
| State income taxes | $ | 244,000.00 |
| Sales and use taxes | $ | 1,854,000.00 |
| Corporate franchise taxes | $ | 427,500.00 |

8. The following taxes levied under Alabama law are similar to the Alabama railroad license tax:

a. § 40–21–50, Code of Alabama 1975, levies a license tax of 2.2 percent of gross receipts on each person operating a public utility selling gas, water, etc. This section exempts from its provisions railroads, etc., which are otherwise licensed. The State of Alabama collected $5,118,557.00 under this section for the fiscal year ending September 30, 1979.

b. § 40–21–53, Code of Alabama 1975, levies a license tax of 2.2 percent on the sale of electricity by each person, firm or corporation operating an electric or hydroelectric public utility. Sales for resale are exempt under this section. The State of Alabama collected $22,338,199.00 under this section for the fiscal year ending September 30, 1979.

c. § 40–21–56, Code of Alabama 1975, levies a license tax of two fifths of a mill (.0004) on each kilowatt hour of hydroelectric power manufactured and sold in the State of Alabama. The State of Alabama collected $1,026,831.00 under this section for the fiscal year ending September 30, 1979.

d. § 40–21–58, Code of Alabama 1975, levies a license tax of two and one-half percent of intrastate gross receipts of telephone companies operating in Alabama. The State of Alabama collected $13,156,444.00 under this section for the fiscal year ending September 30, 1979.

e. § 40–21–59, Code of Alabama 1975, levies a license tax of two and one-half percent of the intrastate gross receipts of telegraph companies operating in the State of Alabama. The State of Alabama collected $5,888.00 under this section for the fiscal year ending September 30, 1979.

f. § 40–21–60, Code of Alabama 1975, levies a license tax of two and one-half percent of the intrastate gross receipts of express companies. Since the one express company on which this tax was levied has ceased operations, the State of Alabama collected no revenue under this section for the fiscal year ending September 30, 1979.

9. Having entered into this Stipulation of Facts, the parties agree that there are no genuine issues of material fact and that this Court may decide the merits of this case on the basis of argument of counsel and upon the basis of the written briefs of the parties to be submitted in accordance with the following schedule:

a. A brief on behalf of plaintiffs shall be filed on or before Monday, September 22, 1980;

b. A brief on behalf of defendants shall be filed on or before Friday, October 3, 1980;

c. A reply brief on behalf of plaintiffs, if submitted, shall be filed on or before Friday, October 10, 1980.

EXHIBIT A

Pub.L. No. 94–210, § 306, 90 Stat. 54 (February 5, 1976), 49 USCA § 26(c)[26c].

§ 26c. Discriminatory taxation by States, political subdivisions, or govern-

mental entities or persons acting on behalf of States or subdivisions–Particular acts unlawful

(1) Notwithstanding the provisions of section 302(b) of this title, any action described in this subsection is declared to constitute an unreasonable and unjust discrimination against, and an undue burden on interstate commerce. It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts:

(a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described), for purposes of a property tax levied by any taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.

(b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).

(c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.

(d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this chapter.

Judicial relief; limitations

(2) Notwithstanding any provision of section 1341 of Title 28, or of the constitution or laws of any State, the district courts of the United States shall have jurisdiction, without regard to amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section, except that–

(a) such jurisdiction shall not be exclusive of the jurisdiction which any Federal or State court may have in the absence of this subsection;

(b) the provisions of this section shall not become effective until 3 years after February 5, 1976;

(c) no relief may be granted under this section unless the ratio of assessed value to true market value, with respect to transportation property, exceeds by at least 5 per centum the ratio of assessed value to true market value, with respect to all other commercial and industrial property in the same assessment jurisdiction;

(d) the burden of proof with respect to the determination of assessed value and true market value shall be that declared by the applicable State law; and

(e) in the event that the ratio of the assessed value of all other commercial and industrial property in the assessment jurisdiction to the true market value of all such other commercial and industrial property cannot be established through the random–sampling method known as a sales assessment ratio study (conducted in accordance with statistical principles applicable to such studies) to the satisfaction of the court hearing the complaint that transportation property has been or is being assessed or taxed in contravention of the provisions of this section, then the court shall hold unlawful an assessment of such transportation property at a value which bears a higher ratio to the true market value of such transportation property than the assessed value of all other property in the assessment jurisdiction in which is included such taxing district and subject to a property tax levy bears to the true market value of all such other property, and the collection of any ad valorem prop-

erty tax on such transportation property at a tax rate higher than the tax rate generally applicable to taxable property in the taxing district.

Definitions

(3) As used in this section, the term—

(a) "assessment" means valuation for purposes of a property tax levied by any taxing district;

(b) "assessment jurisdiction" means a geographical area, such as a State or a county, city, township, or special purpose district within such State which is a unit for purposes of determining the assessed value of property for ad valorem taxation;

(c) "commercial and industrial property" or "all other commercial and industrial property" means all property, real or personal, other than transportation property and land used primarily for agricultural purposes or primarily for the purpose of growing timber, which is devoted to a commercial or industrial use and which is subject to a property tax levy; and

(d) "transportation property" means transportation property, as defined in regulations of the Commission, which is owned or used by a common carrier by railroad subject to this chapter or which is owned by the National Railroad Passenger Corporation.

Feb. 4, 1887, c. 104, Pt. I, § 28, as added Feb. 5, 1976, Pub.L. 94–210. Title III, § 306, 90 Stat. 54, and amended Pub.L. 94–555, Title II, § 220(*o*), Oct. 19, 1976, 90 Stat. 2630.

## JUDGMENT

In conformity with the findings of fact and conclusions of law made and entered this day in the above styled cause, it is the

ORDER, JUDGMENT and DECREE of this Court that plaintiffs receive no relief under Count II of their complaint.

It is the further ORDER of the Court that each party bear its own costs.