**ALABAMA GREAT SOUTHERN RAILROAD COMPANY; Central of Georgia Railroad Company; Southern Railway Company; Tennessee, Alabama & Georgia Railroad Company; and Woodstock & Blocton Railway Company, Plaintiffs,**

**v.**

**Ralph P. EAGERTON, Jr., Commissioner of Revenue of the State of Alabama; and S. L. Evans, Assistant Commissioner of Revenue of the State of Alabama, Defendants.**

Civ. A. No. 80–300–N.

United States District Court, M. D. Alabama, N. D.

May 17, 1982.

---

Rushton, Stakely, Johnston & Garrett, Charles E. Porter, Montgomery, Ala., and Laughlin, Halle, Regan, Clark & Gibson, Everett B. Gibson and Gregory G. Fletcher, Memphis, Tenn., and James W. McBride, Gen. Atty., Taxes Southern Ry. System, Washington, D. C., for all plaintiffs.

Charles A. Graddick, Atty. Gen. of Alabama, Herbert I. Burson, Jr., Chief Counsel & Asst. Atty. Gen., Ron Bowden, Asst. Atty. Gen., Montgomery, Ala., for both defendants.

## MEMORANDUM OPINION

HOBBS, District Judge.

Plaintiff railroad companies brought this action against the Commissioner of Revenue and Assistant Commissioner of Revenue of the State of Alabama seeking (1) a declaration that the State's railroad license tax, § 40–21–57, *Code of Alabama*,[1] discriminates against rail carriers in violation of 49 U.S.C. § 11503,[2] and (2) an order enjoining the defendants from the further collection of the challenged license tax. A nonjury trial was held April 30, 1982. For the reasons set out below, the Court finds the Alabama railroad license tax to discriminate against rail carriers in violation of 49 U.S.C. § 11503 and thus grants plaintiffs declaratory and injunctive relief.

## FACTS

The pertinent facts are fully described in the Court's prior opinion in this cause, which is found at 501 F.Supp. 1044. In that opinion the Court held the challenged license tax to be beyond the scope of § 11503 because the Court interpreted that statute to prohibit only the imposition of discriminatory state property taxes and not other state taxes such as the license tax at issue. However, the Eleventh Circuit Court of Appeals reversed this Court's decision, remanding the case for a determination whether Alabama's railroad license tax discriminates against rail carriers. *Alabama Great Southern R. Co. v. Eagerton*, 663 F.2d

---

1. *Ala.Code* § 40–21–57 (1975) provides:

 In addition to all other taxes imposed by this title, there is hereby levied a license or privilege tax upon each person engaged in the business of operating a railroad in the state of Alabama for the privilege of engaging in such business; said license tax or privilege tax shall be due and payable annually in advance on or before September 25 of each year to the department of revenue by check made payable to the treasurer, and shall be in a sum equal to two and one-half percent of the gross receipts in excess of $150,000.00 of such railroad from all intrastate business of such railroad within the state of Alabama during the preceding year, the gross intrastate earning to be determined by the amount received from intrastate business.

2. 49 U.S.C. § 11503(b) provides in part:

 The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

 \* \* \* \* \* \*

 (4) impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Commission under subchapter I of chapter 105 of this title.

 The parties have stipulated that plaintiff railroad companies are subject to regulation by the Interstate Commerce Commission.

1036 (11th Cir. 1981). On remand, the parties have entered into an "Amended Stipulation of Facts," which is attached to this opinion as Appendix 1.

## CONCLUSIONS OF LAW

Before reaching the question whether the railroad license tax discriminates against rail carriers, the Court must first determine the relevant class or classes of taxpayers to which the rail carriers are to be compared and the pertinent aspects of the State's tax structure to be considered. Defendants argue that the entire tax structure of the State of Alabama must be considered. Plaintiffs, on the other hand, contend that the entire tax structure need not be considered and that the relevant class of taxpayers to be considered in determining whether discrimination exists under 49 U.S.C. § 11503 is the class of commercial and industrial taxpayers.

Even though § 11503(b)(4) does not specifically identify the relevant class or classes of taxpayers, §§ (1), (2), and (3) of 11503(b) establish commercial and industrial property as the standard by which ad valorem tax discrimination against rail carriers must be measured. Defendants have failed to suggest a class or classes of taxpayers which would serve as a more relevant class for comparison purposes. In light of the clear indication found in the body of § 11503(b) that commercial and industrial taxpayers are to be considered in determining whether a tax discriminates against rail carriers, the Court finds that the class of commercial and industrial taxpayers is the relevant class to which rail carriers are to be compared under § 11503(b)(4).

Defendants' argument that the entire tax structure of the State of Alabama must be considered is not persuasive. In *Arizona Public Service Co. v. Snead*, 441 U.S. 141, 99 S.Ct. 1629, 60 L.Ed.2d 106 (1979), the Supreme Court rejected New Mexico's contention that the entire tax structure of the State should be considered in deciding whether an energy tax on the privilege of generating electricity within New Mexico was in violation of 15 U.S.C. § 391, which prohibits the imposition of a tax on the generation or transmission of electricity that discriminates against out-of-state consumers. Likewise, in *Ogilvie v. State Bd. of Equalization*, 657 F.2d 204 (8th Cir. 1981), the Eighth Circuit ruled that the entire tax structure of the State of North Dakota should not be considered in determining whether that State violated § 11503(b)(4) by including personal property and trade fixtures in the assessed value of railroad property when the personal property of other businesses was exempt from ad valorem property taxation. In so ruling the Eighth Circuit remarked:

"As noted in our review of the history of this section, its purpose was to prevent tax discrimination against railroads in any form whatsoever. Congress rejected a proposed section of the bill which would have granted an exemption to states with a constitution providing for a 'reasonable classification of property.' North Dakota's rationalization that they have an equitable tax system because of a business privilege tax is nothing more than an attempt to resurrect, in a different form, an exemption from § 306 for states with a 'reasonable classification of property.' Congress did not accept the proposal and this court will not accept it." *Id.* at 210.

These decisions of the Supreme Court and the Eighth Circuit Court of Appeals are persuasive to the Court that the entire tax structure of the State of Alabama should not be considered in this case. Instead, the Court finds that the Alabama railroad license tax must be compared to business license taxes imposed upon other commercial and industrial taxpayers to determine whether the railroad license taxes is violative of § 11503(b)(4).

At the trial of this cause plaintiffs presented the expert testimony of Walter Hellerstein, a recognized expert in the field of state and local taxation. Mr. Hellerstein testified that, when compared to the modest flat fee license tax imposed on the majority of other businesses, the Alabama railroad license tax clearly discriminates against rail carriers. Mr. Hellerstein remarked that no

commercial or industrial taxpayer other than utilities is subject to more than twenty thousand dollars in Alabama license taxes, while rail carriers are annually subject to three hundred fifty times that amount under the Alabama railroad license tax.

Defendants did not offer any witnesses at trial or present any evidence that the Alabama railroad license tax is not discriminatory, but instead objected to Mr. Hellerstein's testimony on the ground that it was inadmissible because it embraced the ultimate issue to be decided by the Court. The defendants' objection was overruled at trial, see Rule 704, Federal Rules of Evidence. Based on plaintiffs' uncontroverted expert testimony and the amended stipulation of facts entered into by the parties, the Court concludes that the Alabama railroad license tax imposed by § 40–21–57, *Code of Alabama*, discriminates against rail carriers in violation of 49 U.S.C. § 11503(b)(4). Accordingly, defendants are to be permanently enjoined from collecting from plaintiffs the Alabama railroad license tax.

An order will be entered in accordance with this opinion.

## APPENDIX I

### IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | | |
|---|---|---|
| ALABAMA GREAT SOUTHERN RAILROAD, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | CIVIL ACTION NO. 80–300–N |
| RALPH P. EAGERTON, JR., etc., et al., | ) ) ) | |
| Defendants. | ) | |

### AMENDED STIPULATION OF FACTS

It is hereby stipulated and agreed by and among the parties that, for the purpose of resolving the issues presented by the pleadings in this action only, the following facts are true and the exhibits attached hereto are genuine and material:

1. The plaintiffs are railroad companies subject to regulation by the Interstate Commerce Commission and are engaged in interstate commerce in and through the State of Alabama.

2. Defendant, Ralph P. Eagerton, Jr., is the Commissioner of Revenue of the State of Alabama. As such, he is the Chief Executive Officer of the Department of Revenue of the State of Alabama (Department) and exercises all the powers, authorities and duties vested in the Department under Alabama law. § 40–2–40, Code of Alabama 1975.

3. Defendant, S. L. Evans, is the Assistant Commissioner of the Department. As such, he exercises in all matters such authority and duties as are granted and delegated to him by the Commissioner of Revenue and, in the Commissioner of Revenue's absence, he assumes the duties of the office of Commissioner of Revenue. § 40–2–44, Code of Alabama 1975.

4. Defendants, Ralph P. Eagerton, Jr. and S. L. Evans, as Commissioner and Assistant Commissioner of the Department, exercise general and complete supervision and control over the collection of the railroad license or privilege tax imposed by § 40–21–57, Code of Alabama 1975 (Alabama railroad license tax).

5. The plaintiffs are subject to the Alabama railroad license tax. Plaintiff Southern Railway Company paid the State of

Alabama $566,146.00 as railroad license tax in 1979. For the fiscal year beginning September 30, 1979, the State of Alabama collected a total of $1,203,143.00 under the Alabama railroad license tax.

Plaintiff Southern Railway Company on September 22, 1980 filed its return showing its liability of $739,122.05 for Alabama railroad license tax for the 1980 tax year, and on September 29, 1981, plaintiff Southern Railway Company filed its return showing a liability of $912,331.90 for Alabama railroad license tax for the 1981 tax year.

6. 49 U.S.C. § 11503 is an official revision and codification of Pub.L.No.94-210, Section 306, 90 Stat. 54 (February 5, 1976), which was originally enacted as part of the Railroad Revitalization and Regulatory Reform Act of 1976 and codified unofficially as 49 U.S.C.A. § 26(c) (1978 Supp.). A true and accurate copy of § 306 is attached to this Stipulation of Facts as Exhibit "A". 49 U.S.C. § 15503 [11503] was published as part of Pub.L.No.95-473, 92 Stat. 1337 (October 13, 1978), which was "an act to revise, codify and enact without substantive change the Interstate Commerce Act and related laws as Subtitle IV, Title 49, United States Code, 'Transportation'." Pursuant to Pub.L.No.95-473, 92 Stat. 1466, § 3(a), the statutory language of 49 U.S.C. § 11503 cannot be construed as making a substantive change to Section 306. Accordingly, the language of Section 306 is applicable to, and will be employed in, this proceeding.

7. Each of the plaintiffs pays annually to the State of Alabama the following taxes: state ad valorem taxes imposed by § 40-7-1, Code of Alabama 1975; local (county and municipal) ad valorem taxes imposed by § 40-7-1, Code of Alabama 1975; state income taxes imposed by § 40-18-2, Code of Alabama 1975; and sales and use taxes imposed by § 40-23-2 through 40-23-61, Code of Alabama 1975. As corporations doing business in Alabama, each of the plaintiffs pays annually to the State of Alabama corporate franchise taxes im-

posed by § 40-14-41, Code of Alabama 1975. For 1979, plaintiff, Southern Railway Company, paid these taxes in the following approximate amounts:

| | |
|---|---|
| State ad valorem taxes | $ 185,250.00 |
| Local ad valorem taxes | $ 846,000.00 |
| State income taxes | $ 244,000.00 |
| Sales and use taxes | $1,854,000.00 |
| Corporate franchise taxes | $ 427,500.00 |

In 1980, plaintiff, Southern Railway Company paid the State of Alabama income tax in the amount of $376,717.00. Of the 33,922 companies filing corporate income tax returns with the State of Alabama for the 1980 tax year, only ＿＿ companies paid more income tax to the State than did Southern Railway Company.*

For the 1980 tax year plaintiff, Southern Railway Company paid sales and use taxes totalling $2,244,240.41. Of this amount $1,901,952.58 was paid for use tax. Of the 10,508 taxpayers filing use tax returns only two paid more use tax to the State of Alabama for the 1980 tax year than was paid by Southern Railway Company.

Plaintiff, Southern Railway Company paid corporate franchise tax totalling $432,000.00 for the 1980 tax year. Approximately 48,038 companies (10,238 foreign and 37,800 domestic) filed corporate franchise returns for that year. Only one domestic corporation and seven foreign corporations paid more corporate franchise taxes for the 1980 tax year than did Southern Railway Company.

8. The following taxes levied under Alabama law are similar to the Alabama railroad license tax:

a. § 40-21-50, Code of Alabama 1975, levies a license tax of 2.2 percent of gross receipts on each person operating a public utility selling gas, water, etc. This section exempts from its provisions railroads, etc., which are otherwise licensed. The State of Alabama collected $5,118,557.00 under this section for the fiscal year ending September 30, 1979.

---

* The parties orally amended the last sentence of this paragraph at trial to read as follows: "Of the 33,922 companies filing corporate income tax returns with the State of Alabama for the 1980 tax year, Southern Railway Company was in the top 5 percent."

b. § 40–21–53, Code of Alabama 1975, levies a license tax of 2.2 percent on the sale of electricity by each person, firm or corporation operating an electric or hydroelectric public utility. Sales for resale are exempt under this section. The State of Alabama collected $22,338,199.00 under this section for the fiscal year ending September 30, 1979.

c. § 40–21–56, Code of Alabama, 1975, levies a license tax of two fifths of a mill (.0004) on each kilowatt hour of hydroelectric power manufactured and sold in the State of Alabama. The State of Alabama collected $1,026,831.00 under this section for the fiscal year ending September 30, 1979.

d. § 40–21–58, Code of Alabama 1975, levies a license tax of two and one-half percent of intrastate gross receipts of telephone companies operating in Alabama. The State of Alabama collected $13,156,444.00 under this section for the fiscal year ending September 30, 1979.

e. § 40–21–59, Code of Alabama 1975, levies a license tax of two and one-half percent of the intrastate gross receipts of telegraph companies operating in the State of Alabama. The State of Alabama collected $5,888.00 under this section for the fiscal year ending September 30, 1979.

f. § 40–21–60, Code of Alabama 1975, levies a license tax of two and one-half percent of the intrastate gross receipts of express companies. Since the one express company on which this tax was levied has ceased operations, the State of Alabama collected no revenue under this section for the fiscal year ending September 30, 1979.

9. Southern Railroad Company owns and operates 945 miles of railroad track in the State of Alabama.

10. The value of the property in the State of Alabama owned by the Southern Railway Company as of October 1, 1979 was $144,000,000.00. The value as of October 1, 1980 was $158,000,000.00.

11. Railroad companies haul hazardous materials into and through the State of Alabama which materials have in the past spilled.

12. The Plaintiff Railroads have the right of eminent domain in Alabama.

13. The attached Exhibit "B" constitutes a genuine copy of pertinent portions of the State of Alabama Annual Report for the fiscal year ending September 30, 1979 which shows the sources of revenue of the State of Alabama.

14. Having entered into this amended Stipulation of Fact, the parties agree that this Honorable Court may decide this case on the basis of this Stipulation, the Interrogatories of Plaintiffs to Defendants, the Answers of Defendants to said Interrogatories, the testimony of Walter Hellerstein (Mr. Hellerstein's resume is attached hereto as Exhibit "C") and of Harry H. Rawlinson which shall be adduced at the trial on April 30, 1982 and on the argument and Briefs of counsel.

It is agreed that Briefs shall be filed by the parties with the Court not later than April 28, 1982.

15. The above and foregoing Amended Stipulation is approved and agreed to by and between the parties this 19th day of April, 1982.

Exhibit 'A'

Pub.L.No.94–210, § 306, 90 Stat. 54 (February 5, 1976), 49 U.S.C.A. § 26(c).

§ 26c. Discriminatory taxation by States, political subdivisions, or governmental entities or persons acting on behalf of States or subdivisions—Particular acts unlawful

(1) Notwithstanding the provisions of section 302(b) of this title, any action described in this subsection is declared to constitute an unreasonable and unjust discrimination against, and an undue burden on, interstate commerce. It is unlawful for a State, a political subdivision of a State, or a governmental entity or person acting on behalf of such State or subdivision to commit any of the following prohibited acts:

(a) The assessment (but only to the extent of any portion based on excessive values as hereinafter described), for purposes of a property tax levied by any

taxing district, of transportation property at a value which bears a higher ratio to the true market value of such transportation property than the ratio which the assessed value of all other commercial and industrial property in the same assessment jurisdiction bears to the true market value of all such other commercial and industrial property.

(b) The levy or collection of any tax on an assessment which is unlawful under subdivision (a).

(c) The levy or collection of any ad valorem property tax on transportation property at a tax rate higher than the tax rate generally applicable to commercial and industrial property in the same assessment jurisdiction.

(d) The imposition of any other tax which results in discriminatory treatment of a common carrier by railroad subject to this chapter.

### Judicial relief; limitations

(2) Notwithstanding any provision of section 1341 of Title 28, or of the constitution or laws of any State, the district courts of the United States shall have jurisdiction, without regard to amount in controversy or citizenship of the parties, to grant such mandatory or prohibitive injunctive relief, interim equitable relief, and declaratory judgments as may be necessary to prevent, restrain, or terminate any acts in violation of this section, except that—

(a) such jurisdiction shall not be exclusive of the jurisdiction which any Federal or State court may have in the absence of this subsection;

(b) the provisions of this section shall not become effective until 3 years after February 5, 1976;

(c) no relief may be granted under this section unless the ratio of assessed value to true market value, with respect to transportation property, exceeds by at least 5 per centum the ratio of assessed value to true market value, with respect to all other commercial and industrial property in the same assessment jurisdiction;

(d) the burden of proof with respect to the determination of assessed value and true market value shall be that declared by the applicable State law; and

(e) in the event that the ratio of the assessed value of all other commercial and industrial property in the assessment jurisdiction to the true market value of all such other commercial and industrial property cannot be established through the random-sampling method known as a sales assessment ratio study (conducted in accordance with statistical principles applicable to such studies) to the satisfaction of the court hearing the complaint that transportation property has been or is being assessed or taxed in contravention of the provisions of this section, then the court shall hold unlawful an assessment of such transportation property at a value which bears a higher ratio to the true market value of such transportation property than the assessed value of all other property in the assessment jurisdiction in which is included such taxing district and subject to a property tax levy bears to the true market value of all such other property, and the collection of any ad valorem property tax on such transportation property at a tax rate higher than the tax rate generally applicable to taxable property in the taxing district.

### Definitions

(3) As used in this section, the term—

(a) "assessment" means valuation for purposes of a property tax levied by any taxing district;

(b) "assessment jurisdiction" means a geographical area, such as a State or a county, city, township, or special purpose district within such State which is a unit for purposes of determining the assessed value of property for ad valorem taxation;

(c) "commercial and industrial property" or "all other commercial and industrial property" means all property, real or personal, other than transportation property and land used primarily for agricul-

tural purposes or primarily for the purpose of growing timber, which is devoted to a commercial or industrial use and which is subject to a property tax levy; and

(d) "transportation property" means transportation property, as defined in regulations of the Commission, which is owned or used by a common carrier by railroad subject to this chapter or which is owned by the National Railroad Passenger Corporation.

Feb. 4, 1837, c. 104, Pt. I, § 28, as added Feb. 6, 1976, Pub.L.94–210, Title III, § 306, 90 Stat. 54, and amended Pub.L. 94–555, Title II, § 220(o), Oct. 19, 1976, 90 Stat. 2630.

Legislative History. For legislative history and purpose of Pub.L.94–210, see 1976 U.S.Code Cong. and Adm.News, p. 14.

## EXHIBIT "B"
### ANNUAL REPORT, 1979

#### DEPARTMENT OF FINANCE

##### DIVISION OF CONTROL & ACCOUNTS
##### STATEMENT OF RECEIPTS FOR FISCAL YEAR
##### OCTOBER 1, 1978 TO SEPTEMBER 30, 1979

##### EXHIBIT 2

| | Gross Receipts | Receipts Transfers | Net Receipts |
|---|---|---|---|
| **GENERAL FUND:** | | | |
| **TAX REVENUE:** | | | |
| **CORPORATION TAXES:** | | | |
| Franchise Tax | $ 28,589,247.18 | $ | $ 28,589,247.18 |
| Domestic Charter Fee | 119,514.00 | | 119,514.00 |
| Foreign Entrance Fee | 200,486.78 | | 200,486.78 |
| Domestic Permit Fee | 1,016,210.65 | | 1,016,210.65 |
| Agents Occupational License | 1,120.00 | | 1,120.00 |
| Filing Fees | 148,598.25 | | 148,598.25 |
| Limited Foreign, Partnership Fee | 225.00 | | 225.00 |
| | $ 30,075,401.86 | $ | $ 30,075,401.86 |
| **DOCUMENTARY FILING TAXES:** | | | |
| Auto Title Tax | $ 1,484,709.00 | $ 6,736.00 | $ 1,477,973.00 |
| Deed Tax | 1,156,229.50 | | 1,156,229.50 |
| Mineral Documentary Tax | 39,792.52 | | 39,792.52 |
| Mortgage Tax | 4,875,890.28 | | 4,875,890.28 |
| Registration of Securities | 399,677.29 | | 399,677.29 |
| Securities Comm. Recording Fees | 361,051.60 | | 361,051.60 |
| | $ 8,317,350.19 | $ 6,736.00 | $ 8,310,614.19 |
| **GENERAL PROPERTY TAXES:** | | | |
| Ad Valorem Tax 2½ Mills | $ 16,135,564.10 | $ | $ 16,135,564.10 |
| Ad Valorem Tax Prior Year | 448.11 | | 448.11 |
| Ad Valorem Tax—Examiners Assessors & Collectors | 15,397.63 | | 15,397.63 |
| Ad Valorem Tax Insolvents | 7,425.25 | | 7,425.25 |
| Land Redemption 2½ Mills | 44,170.67 | | 44,170.67 |

| | Gross Receipts | Receipts Transfers | Net Receipts |
|---|---|---|---|
| Litigations 2½ Mills ........ | 14,687.36 | | 14,687.36 |
| Sale of Tax Land 2½ Mills ... | 2,322.75 | | 2,322.75 |
| Land Redemption— Advertising ............. | 29,736.43 | | 29,736.43 |
| Sale of Tax Lands— Advertising ............. | 1,850.03 | | 1,850.03 |
| Property Tax Relief 2½ Mills ............... | 3,304,910.90 | 3,304,910.90 | |
| | $ 19,556,513.23 | $ 3,304,910.90 | $ 16,251,602.33 |
| **GROSS RECEIPTS BUSINESS TAXES:** | | | |
| ABC Board Beer Tax .......$ | 8,238,041.07 | $ 8,238,041.07 | $ |
| Insurance Premium Tax ..... | 47,500,915.00 | | 47,500,915.00 |
| ABC Board Liquor & Wine Tax .............. | 4,778,795.67 | 4,778,795.67 | |
| Telegraph Companies Tax ... | 5,887.65 | | 5,887.65 |
| Public Utilities— Water & Gas Tax ........ | 767,783.49 | | 767,783.49 |
| Public Utilities— Electric Tax ............ | 3,350,729.84 | | 3,350,729.84 |
| | $ 64,642,152.72 | $ 13,016,836.74 | $ 51,625,315.98 |
| **EXCISE, SALES, AND USE TAXES:** | | | |
| Lubricating Oils Tax ........$ | 753,989.88 | $ | $ 753,989.88 |
| Other Motor Fuels Tax ...... | 780.00 | | 780.00 |
| Cigarette Tax ............. | 8,427,521.08 | | 8,427,521.08 |
| | $ 9,182,290.96 | $ | $ 9,182,290.96 |
| **OTHER TAXES:** | | | |
| Trial Tax ................$ | 9,197.34 | $ | $ 9,197.34 |
| Severance Tax—Oil & Gas Leases & Production ...... | 11,031,419.51 | 5,261,450.88 | 5,769,968.63 |
| Estate Tax .............. | 6,665,544.14 | | 6,665,544.14 |
| Playing Cards & Punch Board Tax ............. | 76,687.80 | | 76,687.80 |
| Freight Line Equipment Companies Tax ......... | 1,143,520.28 | | 1,143,520.28 |
| Federal Housing Authority .. | 6,477.54 | | 6,477.54 |
| Financial Institutions Excise .. | 2,253,341.86 | 2,253,341.86 | |
| | $ 21,186,188.47 | $ 7,514,792.74 | $ 13,671,395.73 |
| **BUSINESS LICENSES PERMITS & FEES:** | | | |
| Prof. & Occ. Dentist License ...............$ | 3,978.00 | $ | $ 3,978.00 |
| Prof. & Occ. Mine Foreman License ......... | 689.00 | | 689.00 |
| Prof. & Occ. Real Estate Brokers & Agents License ..... | 1,345.00 | | 1,345.00 |
| Prof. & Occ. License Not Otherwise Classified ...... | 545.00 | | 545.00 |
| General Business Privilege License ........ | 2,272,815.55 | | 2,272,815.55 |
| Petroleum Prod. Wholesale Oil Companies .............. | 2,051,664.17 | | 2,051,664.17 |
| Consumer Credit License .... | 137,685.09 | | 137,685.09 |

| | Gross Receipts | Receipts Transfers | Net Receipts |
|---|---|---|---|
| Oil & Gas Drilling Permits . . . | 195,175.00 | 193,675.00 | 1,500.00 |
| Finance Companies License . . | 110,860.00 | | 110,860.00 |
| Motor Vehicle Dealer License . . . . . . . . . . . . . . | 55,435.00 | | 55,435.00 |
| Rating Organizations License . . . . . . . . . . . . . . | 300.00 | | 300.00 |
| Surface Mining Permits . . . . . | 54,800.00 | | 54,800.00 |
| Drivers License . . . . . . . . . . . | 6,256,244.45 | | 6,256,244.45 |
| Hunting License . . . . . . . . . . . | 2,792.90 | | 2,792.90 |
| Accident Records Fees . . . . . . | 53,895.90 | | 53,895.90 |
| Bid or Proposal Fees . . . . . . . . | 35.00 | | 35.00 |
| Drivers License Reinstatment Fees . . . . . . . | 471,392.11 | | 471,392.11 |
| Licensing Registration Lists Fees . . . . . . . . . . . . . | 53,665.68 | | 53,665.68 |
| Uniform Commercial Code Fees . . . . . . . . . . . . . | 277,234.89 | | 277,234.89 |
| Certified Drivers & Reports Fees . . . . . . . . . . . | 991,770.50 | | 991,770.50 |
| License & Permits Not Otherwise Classified . . . . . . | 921,934.56 | | 921,934.56 |
| Docketing & Copying Fees . . . | 35,948.12 | | 35,948.12 |
| Financial Institutions Licenses & Fees . . . . . . . . . | 178,923.91 | | 178,923.91 |
| Docket Fees . . . . . . . . . . . . . . | 5,973,301.37 | | 5,973,301.37 |
| Filing or Recording Fees . . . . | 814.00 | | 814.00 |
| Legal Fees . . . . . . . . . . . . . . . | 1,150.19 | | 1,150.19 |
| Professional or Occupational Examination Fees . . . . . . . . | 2,585.00 | | 2,585.00 |
| Fees Not Otherwise Classified . . . . . . . . . . . . . . | 35,191.10 | | 35,191.10 |
| | $ 20,142,171.49 | $ 193,675.00 | $ 19,948.496.49 |
| **FINES AND FORFEITS:** | | | |
| Judicial Article Fines . . . . . . . $ | 6,533,503.60 | $ | $ 6,533,503.60 |
| Public Safety Fines . . . . . . . . . | 21,734.92 | | 21,734.92 |
| Prior Year . . . . . . . . . . . . . . . | 141.08 | | 141.08 |
| Legal Violations . . . . . . . . . . . | 14,950.53 | | 14,950.53 |
| Abandoned Property . . . . . . . | 372.41 | | 372.41 |
| Fines & Forfeits Not Classified . . . . . . . . . . . . . . | 13,500.00 | | 13,500.00 |
| Arrest Fees . . . . . . . . . . . . . . | 2,677.25 | | 2,677.25 |
| | $ 6,586,879.79 | $ | $ 6,586,879.79 |
| **OTHER REVENUE:** | | | |
| Interest Income State Deposits . . . . . . . . . . . . . . . $ | 29,429,346.14 | $ | $ 29,429,346.14 |
| Interest Income—Misc. Short Term Investments . . . | 4,042,856.79 | | 4,042,856.79 |
| Lease of Oil & Gas Rights . . . . | 287,149.10 | | 287,149.10 |
| Reimbursements Not Otherwise Classified . . . . . . | 5,446.30 | | 5,446.30 |
| Prior Year Refunds . . . . . . . . | 199,284.19 | 33,963.54 | 165,320.65 |
| Pardon & Parole Board Residential Payments . . . . . | 6,844.61 | | 6,844.61 |
| Reimb. Fed. Funds FICA . . . . | 2,243.00 | | 2,243.00 |

| | Gross Receipts | Receipts Transfers | Net Receipts |
|---|---|---|---|
| Sale—Livestock .......... | 31.98 | | 31.98 |
| Sale—Publications ........ | 9,537.16 | | 9,537.16 |
| Sale—Salvage Equipment ... | 110,861.20 | | 110,861.20 |
| Misc.—Not Otherwise Classified .............. | 16,253.19 | | 16,253.19 |
| Conscience Money ......... | 120.00 | | 120.00 |
| Tenn. Valley Authority ..... | 23,298,940.32 | | 23,298,940.32 |
| Contributions Not Classified .............. | 45,000.00 | | 45,000.00 |
| Receipts for Services ....... | 422,544.84 | | 422,544.84 |
| Reversions—Other State Agencies .............. | 4,053,253.13 | 4,053,023.24 | 229.89 |
| Misc.—Transfers Other State Agencies ......... | 7,583,986.96 | 7,579,711.30 | 4,275.66 |
| CETA—Manpower Development ........... | 23,304.95 | | 23,304.95 |
| | $ 69,537,003.86 | $ 11,666,698.08 | $ 57,870,305.78 |
| INTERGOVERNMENTAL REVENUE: | | | |
| Gen. Govern. Fed. Grants ....$ | 349,624.00 | $ 349,624.00 | $ |
| Economic Development & Regulation—Rev.Sharing .. | 1,084,596.14 | 1,084,596.14 | |
| Education & Cultural Resources—Rev. Sharing .. | 70,000.00 | 70,000.00 | |
| Protect. Person & Prop. Rev. Sharing ........... | 9,000.00 | 9,000.00 | |
| Gen. Govern. Rev. Sharing ... | 2,839,989.00 | 2,839,989.00 | |
| Protection of Persons & Prop.—Fed. Reimburse. ... | 188,693.14 | 188,693.14 | |
| Protection of Person & Prop.—Local Agencies .... | 3,079.00 | | 3,079.00 |
| NON–REVENUE RECEIPTS: | | | |
| Abandoned Property .......$ | 1,068,658.08 | $ | $ 1,068,658.08 |
| Previous Years Unpaid Warrants—State Treasurer .............. | 239,456.45 | | 239,456.45 |
| ABC Store Profits ......... | 11,223,434.52 | 11,223,434.52 | |
| | $ 17,076,530.33 | $ 15,765,336.80 | $ 1,311,193.53 |
| TOTAL GENERAL FUND ....$266,302,482.90 | | $ 51,468,986.26 | $214,833,496.64 |
| ALABAMA SPECIAL EDUCA-TIONAL TRUST FUND: | | | |
| ABC Board Beer Tax .......$ | 13,480,072.87 | $ 13,480,072.87 | $ |
| Hydroelectric Tax .......... | 431,269.21 | | 431,269.21 |
| Insurance Premium Tax ..... | 11,818,997.30 | | 11,818,997.30 |
| Railroad Companies Tax ..... | 505,319.90 | | 505,319.90 |
| Telephone Companies Tax ... | 5,525,706.47 | | 5,525,706.47 |
| Utility Tax .............. | 93,962,197.91 | | 93,962,197.91 |
| Income Tax Transfer ....... | 442,280,760.59 | 442,280,760.59 | |
| Sales Tax Transfer ......... | 439,858,863.09 | 439,858,863.09 | |
| Use Tax ................. | 55,618,252.65 | | 55,618,252.65 |
| Lodgings Tax ............. | 3,703,464.11 | 3,703,464.11 | |
| Rental or Leasing Personal Property Tax ............ | 12,926,519.31 | | 12,926,519.31 |
| Tobacco Tax .............. | 1,499,740.68 | | 1,499,740.68 |
| Cigarette Tax ............. | 21,068,803.45 | | 21,068,803.45 |

| | Gross Receipts | Receipts Transfers | Net Receipts |
|---|---|---|---|
| Chain Store License ........ | 288,122.12 | | 288,122.12 |
| Prior Year Refunds ........ | 452,880.18 | 4,826.21 | 448,053.97 |
| Employer Costs from Fed. TRS .............. | 15,560,190.69 | | 15,560,190.69 |
| Sale of Salvage Equipment .. | 3,875.64 | | 3,875.64 |
| Reversions—Other State Agencies .............. | 240,580.03 | 218,325.11 | 22,254.92 |
| Misc.—Transfers from ASETF Surplus Account ... | 64,994,704.25 | 64,994,704.25 | |
| Education & Cultural Resources—Fed. Grants ... | 74,849.00 | | 74,849.00 |
| Economic Develop. Rev. Sharing ............ | 3,880.50 | 3,880.50 | |

## DEPARTMENT OF FINANCE

**DEPARTMENT OF FINANCE**

**DIVISION OF CONTROL AND ACCOUNTS**

**STATEMENT OF RECEIPTS BY PRINCIPAL SOURCES**

**FISCAL YEAR 1978–79**

**EXHIBIT NO. 4**

| | Net Receipts | Percent of Total |
|---|---|---|
| **TAXES:** | | |
| General Sales & Use Tax (4% on Gross Retail Sales of Merchandise; Similar Tax for Use of Merchandise Bought Out of State) ........................$ | 547,302,068.09 | 13.15 |
| Income Tax (1½% to 5% Tax on Personal Income, 5% of Net Corp. Income) .......................... | 454,487,308.59 | 10.92 |
| Gasoline Tax (7c Per Gallon; .027c Aviation; .009c Jet) ...................................... | 147,395,695.81 | 3.54 |
| Utilities Tax (4% Gross Receipts) .................. | 93,962,197.91 | 2.26 |
| Tobacco Tax (12c Per Pack on Cigarettes, varying amounts on cigars, smoking tobacco, snuff, etc.) .... | 52,679,273.15 | 1.27 |
| Alcohol Beverage Control Board (Residue from State Stores)..................................... | 57,595,271.46 | 1.38 |
| Insurance Companies (Fees and Gross Premium License for Privilege of Operating in State) ......... | 62,236,730.30 | 1.50 |
| Motor Vehicle License ($13.00 on Auto up to $780.00 on Trucks and up to $210.00 on Buses) ........... | 40,060,048.09 | .96 |
| Corporation Tax (Franchise, $3.00 Per $1,000 Capital; Permit, Entrance Fees for Filing) ............... | 41,193,442.36 | .99 |
| State Beer Tax & County License (5c Per 12 Oz.) ..... | 35,779,061.74 | .86 |
| General Property Tax (6½ Mills for State on varying rates not over 30%) ........................... | 42,526,079.32 | 1.02 |
| Motor Fuel Tax (Diesel 8c Per Gallon) .............. | 23,216,385.94 | .56 |
| Public Utilities .................................. | 27,456,755.78 | .66 |
| Tennessee Valley Authority ...................... | 23,298,940.32 | .56 |

| | Net Receipts | Percent of Total |
|---|---|---|
| Privilege License (Fees for Privilege of Operating Stores, Factories, Professions, Businesses, etc.) ..... | 11,729,785.18 | .28 |
| Leasing or Renting Tangible Personal Property 4% ... | 12,926,519.31 | .31 |
| Telephone Companies (2½% on Intra-state Gross Receipts) ..................................... | 13,162,331.64 | .32 |
| Petroleum Products Inspection Fees .............. | 8,251,319.69 | .20 |
| Severance Tax (3c Per Ton on Iron Ore; also Forestry and Gas and Oil 6%; 13½c Per Ton Coal) .......... | 7,501,450.50 | .18 |
| Drivers License; Transcripts; Duplicates, etc. ....... | 7,719,407.06 | .19 |
| Financial Inst. Excise Tax (6% of Net Income of banks and other financial institutions) ................. | 9,052,764.10 | .22 |
| Production Privilege Tax ........................ | 11,539,694.75 | .28 |
| Inheritance Tax (Amount of Federal Credit) ......... | 6,665,544.14 | .16 |
| Documentary Filing tax (Auto Title); Deed; Mortgage, Reg. Securities, etc.) ........................... | 8,310,614.19 | .20 |
| Lodgings Tax (4% of Charge) ..................... | 5,104,618.81 | .12 |
| License (Fishing; Hunting; Boat Reg., etc.) ......... | 5,425,761.95 | .13 |
| Motor Carrier—Truck Decal (in lieu of Motor Vehicle License) ...................................... | 3,590,586.50 | .09 |
| Hydroelectric Companies (License Tax of 2/5 Mill Per Kilowatt Hour and 2.2% Per Dollar Gross Receipts) ..................................... | 1,026,831.46 | .02 |
| Lubricating Oil Tax (2c Per Gallon) ............... | 753,989.88 | .02 |
| Railroad Companies (2½% of Intra-state Gross Receipts) ..................................... | 1,203,142.62 | .03 |
| Motor Carriers (Mileage Tax ¼c to 1c Per Mile) ...... | 532,856.41 | .01 |
| Miscellaneous (many small items such as deeds, freight line, equipment companies, etc.) ................. | 5,677,586.78 | .14 |
| TOTAL TAX RECEIPTS ........................ | $1,769,364,063.83 | 42.53 |
| NON–TAX RECEIPTS: | | |
| Federal Funds (Grants for Roads, Schools, Welfare, Civil Defense, etc.) ........................... | 836,762,721.69 | 20.11 |
| Teachers' Retirement System (Members and State Contributions and Portfolio Transactions) ............ | 874,059,063.22 | 21.01 |
| State Employees' Retirement System (Members and State Contributions and Portfolio Transactions) .... | 407,996,203.66 | 9.81 |
| Interest on State Deposits ....................... | 33,472,202.93 | .80 |
| State Insurance Fund (Premiums, etc.) ............. | 39,490,959.37 | .95 |
| Health—General and Mental ..................... | 21,957,587.22 | .53 |
| Miscellaneous Non-Tax (Fees, Departmental Earnings, etc.) ......................................... | 15,273,861.54 | .37 |
| State Employees' Insurance ...................... | 19,020,008.09 | .46 |
| Department of Conservation (Rents, Concessions, Forestry, etc.) ..................................... | 9,987,056.19 | .24 |
| Judicial Retirement System (Members and State Contributions and Portfolio Transactions) ............ | 16,150,344.19 | .39 |
| Miscellaneous Welfare Funds .................... | 9,296,714.79 | .22 |
| Department of Agriculture & Industries (Fuel and other Inspections, Registrations, Shipping Point Inspection, etc.) ................................ | 4,798,815.74 | .12 |
| Corrections & Inst. (Proceeds of Prison Farms, Industries, etc.) ................................... | 3,908,975.18 | .09 |
| Court Revenue—Judicial Article (Fees & Fines) ...... | 12,528,539.89 | .30 |

| | Net Receipts | Percent of Total |
|---|---|---|
| Employer Cost from Federal Funds (Reimbursing ASETF for Teacher Retirement Participation) ..... | 15,560,190.69 | .37 |
| Interest & Principal Maturity (on Revenue Sharing Funds) ................................... | 70,661,950.51 | 1.70 |
| TOTAL NON–TAX RECEIPTS ................... | $2,390,925,194.90 | 57.47 |
| TOTAL RECEIPTS ............................. | $4,160,289,258.73 | 100.00 |

REVOLVING FUNDS AND NON–REVENUE RECEIPTS:

| | |
|---|---|
| ABC Receipts for Beverage Purchase and Administrative Expense ............................... | $ 114,182,450.67 |
| Bond Proceeds & Miscellaneous Capital Outlay ....... | 61,742,552.74 |
| Debt Service & Reserves ........................ | 9,568,936.65 |
| Federal Social Security ......................... | 18,631,660.19 |
| Federal Withholding Tax ........................ | 69,300,004.27 |
| Gross Receipts Tax (City and County) .............. | 110,854,930.06 |
| Coal Tax City and County ....................... | 4,688,396.76 |
| Miscellaneous Highway Funds .................... | 24,656,718.49 |
| Miscellaneous Office Buildings Operating Funds ...... | 1,798,475.61 |
| Social Security Contributions Fund ................ | 251,428,082.65 |
| State Employees' Savings Bonds, Mail & Supply Room, etc........................................ | 22,135,293.91 |
| State Withholding Tax .......................... | 9,009,075.25 |
| TOTAL REVOLVING FUNDS AND NON-REVENUE RECEIPTS ................................ | $ 697,996,577.25 |
| TOTAL NET RECEIPTS FROM ALL SOURCES ...... | $4,858,285,835.98 |

## EXHIBIT "C"

*Resume*

### WALTER HELLERSTEIN

Office Address:

University of Georgia
School of Law
Athens, Georgia 30602
(404) 542–7542

Home Address:

410 Hampton Court
Athens, Georgia 30605
(404) 353–0865

### PERSONAL DATA:

Birth Date: June 21, 1946

Place of Birth: New York, New York

Marital Status: Married, two children

### EDUCATION:

Harvard College, A.B., 1967

*Magna cum Laude* in Government

*Phi Beta Kappa*

University of Chicago Law School, J.D., 1970

*Cum Laude*

Order of the Coif

Editor-in-Chief, University of Chicago Law Review

### MILITARY SERVICE:

Captain, United States Air Force, 1970–76

(Active service obligation fulfilled through participation in the Honors Program of the Air Force General Counsel's Office from September 1971 through June 1973)

### LEGAL EXPERIENCE:

September 1978—: Associate Professor, University of Georgia School of Law

January 1976—August 1978: Assistant Professor of Law, The University of Chicago

July 1973—December 1975: Associate, Covington & Burling, Washington, D. C.

September 1971—June 1973: Attorney, Office of the General Counsel of the Secretary of the Air Force (Honors Program)

July 1971—September 1971: Summer Associate, Cleary, Gottlieb, Steen & Hamilton, Paris, France

July 1970—July 1971: Law Clerk to the Hon. Henry J. Friendly, Chief Judge, United States Court of Appeals for the Second Circuit

## PROFESSIONAL ACTIVITIES:

Member, Board of Directors, National Tax Association—Tax Institute of America

Member, State and Local Tax Committee, State Tax Section, American Bar Association

Member, State Tax Section, Illinois State Bar Association

Faculty Member, American Law Institute—American Bar Association, Courses on State and Local Taxation and Financing

Faculty Member, Georgetown University Law Center Annual Institute on State and Local Taxation

Shell Foundation Lecturer, Tulane University Law School

## BAR MEMBERSHIPS:

Admitted: Illinois, 1976; District of Columbia, 1970

## PUBLICATIONS:

*Books and Monographs*

With Jerome R. Hellerstein, State and Local Taxation, Cases and Materials, 4th ed. (West Publishing Co., 1978)

With S. Davidson, D. Green, A. Madansky, and R. Weil, Financial Reporting by State and Local Government Units (Center for Management of Public and Nonprofit Enterprise of the University of Chicago, 1977)

*Articles*

State Income Taxation of Multijurisdictional Corporations: Reflections on *Mobil, Exxon*, and H.R. 5076, 79 Mich. L.Rev. 113 (1980)

With Michael Wells, The Governmental-Proprietary Distinction in Constitutional Law, 66 Va.L.Rev. 1073 (1980)

*Hughes v. Oklahoma* : The Court, the Commerce Clause, and State Control of Natural Resources, 1979 Sup.Ct.Rev. 51 (1980)

State's Power to Tax Foreign Commerce Dominates Supreme Court's 1978 Agenda, 51 J.Tax. 106 (1979)

Construing the Uniform Division of Income for Tax Purposes Act: Reflections on the Illinois Supreme Court's Reading of the "Throwback" Rule, 45 U.Chi.L.Rev. 768 (1978)

Constitutional Constraints on State and Local Taxation of Energy Resources, 31 Nat.Tax J. 245 (1978)

State Taxation and the Supreme Court: Toward a More Unified Approach to Constitutional Adjudication?, 75 Mich. L.Rev. 1426 (1977)

*Michelin Tire Corp. v. Wages* : Enhanced State Power to Tax Imports, 1976 Sup.Ct.Rev. 99 (1977)

State Taxation and the Supreme Court, 1974 Term: *Standard Pressed Steel* and *Colonial Pipeline*, 62 Va.L.Rev. 149 (1976)

Some Reflections on the State Taxation of a Nonresident's Personal Income, 72 Mich.L.Rev. 1309 (1974)

Body-Snatching Reconsidered: The Exhumation of Some Early American Legal History, 39 Bklyn.L.Rev. 350 (1972)

## ADDENDUM

## PROFESSIONAL ACTIVITIES:

Faculty Member, Tax Executives Institute Course on State and Local Taxation

## PUBLICATIONS:

Supreme Court Bars Louisiana's First Use Tax, Upholds California's Retaliatory Insurance Tax, 55 J.Tax. 106 (1981)

State Taxation in the Federal System: Perspectives on Louisiana's First Use

Tax on Natural Gas, 55 Tul.L.Rev. 601 (1981)

Constitutional Limitations on State Tax Exportation, 1982 A.B.F.Res.J. 1 (*Forthcoming*)

Legal Constraints on State Taxation of Natural Resources, in C. McLure and P. Mieszkowski, eds., Fiscal Federalism and the Taxation of Natural Resources (Lexington Books 1982)

Federal Limitations on State Taxation of Interstate Commerce, in T. Sandalow and E. Stein, eds., Courts and Free Markets: Perspectives from the United States and Europe 431 (Oxford University Press 1982)

With Mark D. Kaufman, Sales and Use Taxation of Movable Property in Interstate Commerce, 1981 Procs. of the Nat'l Tax Ass'n—Tax Inst. of Am.

With Mike McGrath, Reflections on Commonwealth Edison Co. v. Montana, —— Montana Law Review —— (1982)

Testimony of Walter Hellerstein before the Subcomm. on Intergovernmental Relations of the Senate Comm. on Governmental Affairs, "The Commerce Clause and State Severance Taxes," July 15, 1981

RESEARCH IN PROGRESS

State Taxation of Natural Resources in the Federal System: Legal, Economic, and Political Perspectives (to be published by Harvard University Press)